**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Alson C. Alston,

          Plaintiff,

          – against –

Commonwealth of Pennsylvania,
Pennsylvania Department of General Services,
Bureau of Diversity, Inclusion, and Small Business Opportunities,
Pennsylvania Office of Administration - Human Resources,
Governor's Office of General Counsel,
Reggie McNeil, in his official capacity,
Kerry Kirkland, in his official and individual capacities,
Lisa Sanford, in her official and individual capacities,
Kheea Anderson, in her official and individual capacities,
Lorraine Calien, in her official and individual capacities,
Lori Butler, in her official and individual capacities,
Rocky Wright, in his official and individual capacities,
Corey Burnett, in his official and individual capacities,
and John/Jane Does 1-10,

          Defendants.

Civil Action No.: 2:26-cv-3503

**Jury Trial Demanded**

## VERIFIED COMPLAINT

Plaintiff Alson C. Alston, by and through undersigned counsel, hereby submits this Verified Complaint to state claims seeking redress for race discrimination, disability discrimination, failure to accommodate, hostile work environment, retaliation, interference with protected rights, and related unlawful employment practices committed by Defendants during Plaintiff's employment with the Commonwealth of Pennsylvania Department of General Services, Bureau of Diversity, Inclusion, and Small Business Opportunities, with the assistance

1

or participation of the Pennsylvania Office of Administration - Human Resources and the Governor's Office of General Counsel.

## I. INTRODUCTION

1. This action arises from Plaintiff's brief employment beginning on or about February 5, 2024, with the Commonwealth of Pennsylvania Department of General Services, Bureau of Diversity, Inclusion, and Small Business Opportunities ("BDISBO"). In approximately two months, Plaintiff attests that BDISBO management, assisted by Human Resources ("HR") and the Governor's Office of General Counsel ("OGC"), subjected him to racial harassment, disability harassment, retaliation, and failure to accommodate his physical disability.

2. Plaintiff is an African-American attorney who began the job with a substantial professional background and an Ivy League education. Within days of his arrival, coworkers and supervisors reacted negatively to his Princeton background, his presentation as a professional African-American man, and his requests for reasonable disability accommodations.

3. Plaintiff attests that the discriminatory course of conduct included race-based ridicule and humiliation, the revocation or denial of disability accommodations, forced or threatened workspace changes, two baseless HR investigations, obstruction of Plaintiff's effort to seek other Commonwealth employment, and conduct that caused physical injury, severe anxiety, emergency-room visits, Employee Assistance Program ("EAP") contacts, and emergency leave.

4. On April 11, 2024, Plaintiff filed EEOC Charge No. 530-2024-05145 and the EEOC filed a cross-complaint with the Pennsylvania Human Relations Commission

2

("PHRC") effective that same date, identifying discrimination based on race, retaliation, and disability, with a continuing-action period beginning on or about February 7, 2024 and continuing through at least April 2, 2024. Plaintiff also filed an amended charge on April 15, 2024. (Ex. 1)  The EEOC issued a Right-to-Sue Letter on Feb. 20, 2026. (Ex. 2)

## II. THE PARTIES

5.    Plaintiff Alson C. Alston is an African-American attorney and a person with a physical disability within the meaning of the ADA and PHRA. At relevant times, Plaintiff resided at 2836 W. Girard Avenue, Philadelphia, Pennsylvania 19130.

6.    Defendant Commonwealth of Pennsylvania is Plaintiff's public employer, acting through its agencies, departments, bureaus, offices, employees, agents, and officials.

7.    Defendant Pennsylvania Department of General Services ("DGS") is a Commonwealth agency and was Plaintiff's employer or joint employer at all relevant times. DGS employed at least fifteen employees within the meaning of Title VII and the ADA.

8.    Defendant Reggie McNeil was at all relevant times the Secretary of DGS.  After Alston sent him a detailed report of events occurring within DGS, specifically naming Kerry Kirkland, Lisa Sanford and Corey Burnett, McNeil suspended Alston's access to all internal systems.

9.    Defendant Bureau of Diversity, Inclusion, and Small Business Opportunities ("BDISBO") is a DGS bureau or organization through which Plaintiff was employed. BDISBO is located within the Department of General Services and implemented, ratified, and failed to remedy the challenged conduct.

3

10. Defendant Pennsylvania Office of Administration - Human Resources ("OA-HR" or "HR") is located at 210 Finance Building, 613 North Street, Harrisburg, Pennsylvania 17120. Plaintiff identified OA-HR as a respondent in his administrative charge because HR participated in the challenged investigations, accommodation decisions, and failure to remedy discrimination.

11. Defendant Governor's Office of General Counsel ("OGC") is located at 333 Market Street, 17th Floor, Harrisburg, Pennsylvania 17101. Plaintiff identified OGC as a respondent in his charge because OGC participated in and/or assisted the challenged employment actions, including the use of unverified accusations to block Plaintiff's employment opportunities.

12. Defendant Kerry Kirkland was at relevant times a Deputy Secretary or senior official involved with BDISBO. Plaintiff attests that he went to Kirkland twice seeking assistance to stop harassment, but Kirkland instead launched or caused HR investigations that placed Plaintiff under threat of immediate termination and professional harm.

13. Defendant Lisa Sanford was at relevant times a Director or management official within BDISBO. Plaintiff attests that Sanford unilaterally revoked or interfered with disability accommodations, yelled at Plaintiff, moved or shoved his personal effects, and required Plaintiff to work in a materially inferior workspace.  After Alston was forced to take a mental health leave of absence during which time he filed his EEOC/PHRC complaints, Sanford repeatedly, both verbally and via email, instructed BDISBO employees not to communicate with Alston or cooperate with any investigation involving him.

4

14. Defendant Kheea Anderson was at relevant times Plaintiff's supervisor. Plaintiff attests that Anderson ordered him to transport a heavy desk approximately 100 miles from Philadelphia, causing or contributing to physical injury, before management later told him the desk could not be used.

15. Defendant Lorraine Calien was at relevant times a special assistant or employee associated with BDISBO management. Plaintiff attests that Calien participated in race-based and disability-based harassment, including degrading comments, public questioning of Plaintiff's medical condition, and cross-examination of Plaintiff when accommodations were being considered.

16. Defendant Lori Butler was at relevant times a special assistant or employee associated with BDISBO management. Plaintiff attests that Butler participated in the attempted removal or reduction of Plaintiff's workspace and personal setup and made comments, in Plaintiff's presence, indicating that his work materials or setup had to be removed.

17. Defendant Rocky Wright was at relevant times a manager or supervisory employee. Plaintiff attests that Wright participated in race-based comments and conduct, including references to his own HBCU, after Plaintiff's Princeton background became known, and offering comments minimizing Plaintiff's accomplishments because Plaintiff's education had not resulted in riches for Alston, evidenced by Alston's need for employment with BDISBO.

18. Defendant Corey Burnett was at relevant times a supervisor or employee. Plaintiff attests that Burnett made sarcastic comments about Plaintiff's "fancy school" or words to that effect after Plaintiff's Princeton education became known.  Burnett also began the campaign to remove Alston from a larger, previously unused office that had been assigned to Alston as

a disability accommodation, for reasons of envy, jealousy and spite due to Alston being an African-American with an Ivy League education that Burnett did not have.

19. Defendants John/Jane Does 1-10 are unknown HR, OGC, BDISBO, OA, DGS, or Commonwealth employees or agents who participated in the challenged actions, investigations, accommodation decisions, retaliation, or obstruction of Plaintiff's employment opportunities.

## III. JURISDICTION

20. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and 42 U.S.C. §§ 1981 and 1983 to the extent asserted against individual state actors through § 1983. The instant complaint is filed 90 days after the issuance of the Right-to-Sue Letter by the EEOC, which meets the statutory guidelines for the filing of Title VII complaints in state or federal courts. (Ex. 2).

21. Jurisdiction also exists under 28 U.S.C. § 1343(a)(3) and (4) for claims seeking redress for deprivation of civil rights under color of state law.

22. Supplemental jurisdiction over Plaintiff's state-law claims is proper under 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the federal claims and include violations of the Pennsylvania Human Relations Act, 43 P.S.

6

§ 951 et seq. The instant complaint is filed 90 days after the issuance of the Right-to-Sue Let-

ter, which meets the statutory guidelines for the filing of PHRA complaints in state or federal

courts.[1]

23. Plaintiff recognizes that some claims against Commonwealth agencies or officials

may require careful review for sovereign-immunity issues. To the extent immunity limits

damages against a state agency under any count, Plaintiff seeks all non-barred relief, includ-

ing prospective injunctive relief against proper official-capacity defendants and damages

against proper non-immune defendants.

## IV. VENUE

24. Venue in the Eastern District of Pennsylvania is proper under 28 U.S.C. §

1391(b)(1) and/or (b)(2) because Plaintiff resides in this District, a substantial part of the

events and omissions giving rise to the claims occurred in this District, and Defendants' ac-

tions foreseeably caused injury to Plaintiff in this District.

25. Plaintiff performed work, traveled from Philadelphia for work-related purposes,

was required to transport work furniture from Philadelphia, sought medical and emotional

---

[1] The PHRA permits a complainant to bring a civil action after the administrative process has been ex-
hausted or otherwise permits suit, including where the PHRC has closed the matter or where the statutory period
for PHRC action has elapsed. Plaintiff pleads that his PHRA claims are timely based on the April 11, 2024
PHRC cross-filing, the administrative charge materials, and the February 20, 2026 Right-to-Sue Letter.

support while residing in this District, and suffered the consequences of Defendants' conduct in this District.

## V. ADMINISTRATIVE EXHAUSTION

26. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 530-2024-05145, on April 11, 2024 and the EEOC filed a cross-complaint with the Pennsylvania Human Relations Commission ("PHRC") effective that same date.

27. Plaintiff's Charge identified the Pennsylvania Department of General Services - BDISBO and Pennsylvania Office of Administration - Human Resources as respondents and further stated that the complaint was also against the Governor's Office of General Counsel. Plaintiff checked race, retaliation, and disability as the bases of discrimination, identified the earliest date of discrimination as February 7, 2024, identified the latest date as April 2, 2024, and checked continuing action.

28. Plaintiff filed an amended charge dated April 15, 2024, restating the respondents and allegations and continuing to identify race, retaliation, disability, and continuing action. (Ex. 1)

29. The EEOC issued a Right-to-Sue Letter on Feb. 20, 2026. (Ex. 2)  The instant complaint is filed 90 days later, meeting the statutory guidelines for both Title VII and PHRA complaints in state or federal courts.

30. Plaintiff incorporates the administrative charges and any Right-to-Sue Notice by reference as though fully set forth herein.

8

## VI. GOVERNING LEGAL FRAMEWORK

31. Title VII prohibits discrimination with respect to compensation, terms, conditions, or privileges of employment because of race and prohibits retaliation because an employee opposed unlawful employment practices or participated in protected activity.

32. Title VII also prohibits a racially hostile work environment where discriminatory intimidation, ridicule, insult, or other conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

33. The ADA prohibits discrimination against a qualified individual on the basis of disability and requires reasonable accommodation of known physical or mental limitations unless the employer can demonstrate undue hardship.

34. The ADA prohibits retaliation and interference with the exercise or enjoyment of rights protected by the statute, including requests for reasonable accommodation and complaints about disability-based harassment.

35. The PHRA prohibits discrimination and retaliation on the basis of race and disability and is pleaded in parallel with Plaintiff's Title VII and ADA claims to the extent exhaustion, immunity, and jurisdictional prerequisites are satisfied.

36. 42 U.S.C. § 1981 protects the equal right to make and enforce contracts without racial discrimination. For claims against state actors, Plaintiff pleads § 1981 rights through 42 U.S.C. § 1983 where appropriate.

37. 42 U.S.C. § 1983 provides a remedy against persons acting under color of state law who deprive Plaintiff of rights secured by the Constitution and laws of the United States, including equal protection and rights secured by § 1981.

## VII. FACTUAL BACKGROUND

### A. Plaintiff's Hiring, Arrival at BDISBO, and Early Workplace Conditions

38. Plaintiff is an African-American male and an attorney licensed to practice law in the Commonwealth of Pennsylvania. (Ex. 500; Ex. 510).

39. On February 5, 2024, Plaintiff began employment with the Department of General Services ("DGS"), Bureau of Diversity, Inclusion, and Small Business Opportunities ("BDISBO"), as an Equal Opportunity Specialist 2 in Harrisburg, Pennsylvania. (Ex. 500; Ex. 510).

40. Plaintiff alleges that BDISBO had approximately twenty-two employees and was overwhelmingly controlled by a small group of closely aligned management personnel associated with Deputy Secretary Kerry Kirkland. (Ex. 500; Ex. 510).

41. Plaintiff alleges that BDISBO management included numerous relatives, close friends, political associates, or individuals personally connected to Deputy Secretary Kirkland, including persons associated with York, Pennsylvania. (Ex. 500; Ex. 510).

42. Plaintiff alleges that BDISBO management fostered an African-American, HBCU-alumni, clique-based and retaliatory workplace culture in which African-American employees outside favored social, educational and political circles were marginalized, intimidated, or targeted, while non-African-American employees were not subject to such hostilities or judgments. (Ex. 500; Ex. 510).

10

43. Plaintiff further alleges that BDISBO management tolerated hostility, favoritism, humiliation, retaliation, and discriminatory treatment directed at employees perceived as outsiders, dissenters, or threats to management authority. (Ex. 500; Ex. 510).

44. Plaintiff alleges that he quickly became perceived as an outsider because he was an African-American male attorney with Ivy League educational credentials who did not share BDISBO management's social alliances or workplace culture. (Ex. 500; Ex. 510).

45. On February 7, 2024, during one of Plaintiff's first Bureau meetings, Deputy Secretary Kerry Kirkland introduced Plaintiff while emphasizing Plaintiff's Princeton University education. (Ex. 500; Ex. 510).

46. Plaintiff alleges that, immediately after Kirkland referenced Plaintiff's Princeton background, multiple employees reacted with resentment, hostility, audible disdain, or mocking commentary. (Ex. 500; Ex. 510).

47. Plaintiff alleges that Rocky Wright yelled the name of his HBCU during the introduction and that multiple employees expressed hostility specifically tied to Plaintiff's educational background and perceived status. (Ex. 500; Ex. 510).

48. Plaintiff further alleges that management personnel and coworkers repeatedly referenced his Ivy League education in a mocking, resentful, hostile, or degrading manner throughout February and March 2024. (Ex. 500; Ex. 510).

49. Plaintiff alleges that Lorraine Calien spread degrading rumors suggesting that Plaintiff caused an odor in the conference room despite Plaintiff having no reason to believe such statements were true. (Ex. 500; Ex. 510).

11

50. Plaintiff alleges that Corey Burnett repeatedly made comments or engaged in conduct reflecting hostility toward Plaintiff's educational background and perceived professional status. (Ex. 500; Ex. 510).

51. Plaintiff further alleges that Rocky Wright made comments to the effect that Plaintiff could not be "all that" if he was a Black man with an Ivy League education and still was not wealthy. (Ex. 500; Ex. 510).

52. Plaintiff alleges that these comments and actions reflected hostility directed toward Plaintiff as an African-American professional perceived as academically elite, independent, insufficiently deferential, or outside the preferred in-group culture of BDISBO management. (Ex. 500; Ex. 510).

53. Plaintiff further alleges that the racial hostility described above later merged with disability-related hostility, retaliation, and workplace harassment. (Ex. 500; Ex. 510).

### B. ADA/PHRA Disability Violations

54. Plaintiff has Type II diabetes, neuropathy, circulation limitations, and related physical impairments affecting his ability to sit, stand, walk, and travel for extended periods without accommodation. (Ex. 500).

55. On or about February 7, 2024, Plaintiff fell while walking to or from the remote parking assigned to him, aggravating his physical condition and prompting his request for medical accommodations. (Ex. 500; Ex. 510).

56. On or about February 8, 2024, Plaintiff began the workplace injury and accommodation process, including requests for closer parking, soft-soled orthopedic footwear, and a sit/stand workstation. (Ex. 500).

57. During February 2024, while Plaintiff's formal accommodation request was pending, Plaintiff's supervisors permitted him to use a receptionist-area cubicle with a taller desk configuration because it reduced his physical strain and circulation problems. (Ex. 500; Ex. 510).

58. On February 21, 2024, Plaintiff's supervisor confirmed by email that the cubicle near the rear door would serve as Plaintiff's "permanent workspace." (Ex. 5).

59. Plaintiff relied upon that February 21, 2024 confirmation and treated the cubicle assignment as part of his disability accommodation. (Ex. 5; Ex. 500).

60. On February 26, 2024, Lorraine Calien ordered Plaintiff to her office and questioned him about his medical condition, disability history, need for accommodations, and whether he should have disclosed his disability earlier. (Ex. 7; Ex. A1; Ex. 500; Ex. 510).

61. Plaintiff alleges that Calien's interrogation was hostile, humiliating, unnecessary, and outside the lawful accommodation process. (Ex. 7; Ex. A1; Ex. 500; Ex. 510).

62. Plaintiff alleges that Calien questioned Plaintiff's integrity, medical legitimacy, and honesty concerning his disabilities in circumstances where coworkers could overhear the discussion. (Ex. 500; Ex. 510).

63. On March 1, 2024, BEEOPA formally approved Plaintiff's accommodations, including a sit/stand workstation, orthopedic footwear accommodation, and parking accommodation. (Ex. 12).

13

64. Despite the March 1, 2024 approval, Defendants delayed providing the approved sit/stand workstation and instead proposed unusable substitute furniture that Plaintiff could not safely or effectively use. (Ex. 30; Ex. 500; Ex. 510).

65. On March 21, 2024, a contractor measured Plaintiff's approved cubicle for installation or modification related to the sit/stand workstation. (Ex. 120; Ex. 500; Ex. 510).

66. On March 22, 2024, Plaintiff was instructed to bring his own personal sit/stand desk from Philadelphia to Harrisburg for interim use. (Ex. 110; Ex. 120; Ex. 500; Ex. 510).

67. Plaintiff objected that the desk was extremely heavy and physically unsafe for him to move, but he nevertheless transported it approximately 100 miles from Philadelphia to Harrisburg on March 26, 2024. (Ex. 110; Ex. 500; Ex. 510).

68. On March 26, 2024, after Plaintiff transported the desk, Defendants refused to use it and continued refusing to provide the approved electric sit/stand workstation. (Ex. 30; Ex. 110; Ex. 120; Ex. 500; Ex. 510).

69. On March 27, 2024, Plaintiff emailed HR/BEEOPA that BDISBO was failing to accommodate him, that he was physically and emotionally injured, and that the substitute items were not the approved accommodation. (Ex. 30).

70. On March 29, 2024, BEEOPA issued an updated determination confirming that Plaintiff was entitled to an electric sit/stand desk. (Ex. 55; Ex. 60).

71. Plaintiff alleges that Defendants' conduct constituted failure to accommodate, failure to engage in the interactive process in good faith, disability harassment, and interference with approved accommodations under the ADA and PHRA.

14

### C. Protected Activities

72. Plaintiff engaged in protected activity when he sought medical accommodations beginning in February 2024. (Ex. 500; Ex. 510).

73. Plaintiff engaged in protected activity when he complained to HR/BEEOPA about Calien's February 26, 2024 questioning of his medical history and accommodation needs. (Ex. 7; Ex. A1; Ex. 500; Ex. 510).

74. Plaintiff engaged in protected activity on March 5, 2024, when he complained to Deputy Secretary Kirkland about Calien's conduct and other workplace harassment. (Ex. A1; Ex. 500; Ex. 510).

75. Plaintiff engaged in protected activity on March 27, 2024, when he reported that BDISBO was failing to accommodate him and that Defendants' conduct had physically and emotionally injured him. (Ex. 30).

76. Plaintiff engaged in protected activity on March 29, 2024, when he emailed Deputy Secretary Kirkland complaining about Lisa Sanford's conduct, Lori Butler's conduct, revocation of accommodations, harassment, retaliation, and injury. (Ex. 120).

77. Plaintiff engaged in protected activity on April 5, 2024, when he filed an internal complaint alleging failure to accommodate, retaliation, hostile workplace, and discrimination under the ADA and Civil Rights Act. (Ex. 500).

78. Plaintiff engaged in protected activity again on April 8, 2024, when he amended that internal complaint and reiterated his allegations of disability discrimination, retaliation, racial hostility, and HR/OGC complicity. (Ex. 510).

15

## D. Retaliation

79. Plaintiff alleges that, after he sought and received accommodations, Defendants began treating his accommodations as suspicious, burdensome, and grounds for scrutiny. (Ex. 7; Ex. 500; Ex. 510).

80. On March 26, 2024, Lori Butler appeared at Plaintiff's accommodated cubicle with another individual and stated words to the effect that Plaintiff's belongings and work-space "had to go." (Ex. 1X; Ex. 120; Ex. 500; Ex. 510).

81. Minutes later, Lisa Sanford entered Plaintiff's accommodated cubicle, yelled at him, ordered him removed from that cubicle, and directed that his belongings be moved. (Ex. 1X; Ex. 30; Ex. 120; Ex. 500; Ex. 510).

82. Plaintiff alleges that Sanford's March 26, 2024 conduct revoked or materially interfered with his approved accommodation. (Ex. 30; Ex. 120; Ex. 500; Ex. 510).

83. Also on March 26, 2024, HR investigators questioned Plaintiff about allegations that he had undisclosed supplemental employment and had improperly stayed in the office overnight. (Ex. 1X; Ex. 2; Ex. 2X; Ex. 500; Ex. 510).

84. Plaintiff alleges that the March 26, 2024 HR investigation was baseless, retaliatory, and launched after his protected accommodation activity and complaints. (Ex. 2; Ex. 500; Ex. 510).

85. Plaintiff alleges that OGC reported or contributed to an accusation that Plaintiff had undisclosed supplemental employment based on a resume line in an application for transfer to OGC. (Ex. 1X; Ex. 2; Ex. 500; Ex. 510).

16

86. OGC did so without discussing the accusation or its basis with Plaintiff. (Ex. 1X; Ex. 2; Ex. 500; Ex. 510).

87. Plaintiff was told or caused to understand that, because of OGC's accusation and/or the pending HR investigation, OGC would not interview him for an available attorney position. (Ex. 1X; Ex. 2; Ex. 500; Ex. 510).

88. HR did not tell Plaintiff how OGC learned of the BDISBO investigation, how OGC could add unrelated speculation to an HR investigation, or how speculation could prevent Plaintiff from obtaining an interview or job for which he was qualified without a hearing. (Ex. 1X; Ex. 2; Ex. 500; Ex. 510).

89. Plaintiff alleges that OGC's participation converted the internal harassment into a broader retaliatory effort to trap him in the hostile workplace and prevent his escape to other Commonwealth employment. (Ex. 1X; Ex. 2; Ex. 500; Ex. 510).

90. On April 2, 2024, Plaintiff learned that BDISBO had initiated a second investigation against him. (Ex. 510).

91. On April 3, 2024, Defendants issued Plaintiff a pre-disciplinary conference notice alleging failure to follow instructions and inappropriate conduct based in part on Plaintiff's March 29, 2024 complaint to Deputy Secretary Kirkland. (Ex. 79; Ex. 80a).

92. Plaintiff alleges that the second investigation and pre-disciplinary conference were retaliatory because they followed immediately after Plaintiff's protected complaints and treated Plaintiff's March 29, 2024 protected complaint as punishable workplace disruption. (Ex. 79; Ex. 80a; Ex. 120; Ex. 500; Ex. 510).

17

93. On April 3, 2024, Plaintiff objected that the pre-disciplinary conference had been scheduled without adequate due process and without adequate opportunity for representation. (Ex. 79).

94. Plaintiff alleges that Defendants' investigations, threats of discipline, refusal to correct accommodations, and interference with transfer opportunities constituted retaliation for requesting accommodations, complaining of disability discrimination, and opposing racial and disability-based harassment.

### E. Constructive Discharge

95. Defendants' conduct caused Plaintiff physical injury, emotional distress, anxiety, despair, humiliation, and fear for his career and professional license. (Ex. 30; Ex. 90; Ex. 500; Ex. 510).

96. Plaintiff went to the emergency room twice in connection with the effects of Defendants' conduct, including the injury and stress following the March 26, 2024 accommodation revocation and desk incident. (Ex. 120; Ex. 500; Ex. 510).

97. Plaintiff contacted SEAP multiple times, including overnight on March 26–27, 2024, and spoke with multiple SEAP counselors. (Ex. 8; Ex. 90; Ex. 500; Ex. 510).

98. On April 3, 2024, Plaintiff informed his supervisor that, due to the exceptional stress and work pressures at BDISBO, he was forced to take EFA leave effective immediately. (Ex. 90).

99. Plaintiff remained on EFA leave from April 3, 2024 through July 1, 2024. (Ex. 90).

18

100.	During that period, Defendants did not materially change BDISBO management, did not restore trust in the accommodation process, did not remove the individuals Plaintiff alleged had harassed or retaliated against him, and did not provide reasonable assurances that Plaintiff could return safely.

101.	On May 13, 2024, BEEOI informed Plaintiff that it was closing his internal discrimination complaint because Plaintiff had filed an EEOC complaint, and that the matter would be referred to agency legal counsel. (Ex. A2).

102.	Plaintiff alleges that the May 13, 2024 closure confirmed that HR would not protect him, investigate his internal complaint on the merits, or remediate the hostile and retaliatory conditions. (Ex. A2; Ex. May 15 EEOC Memo).

103.	Plaintiff alleges that no reasonable person in his position would have returned to BDISBO under the same management structure after the accommodation revocation, retaliatory investigations, OGC interference, HR inaction, and continuing threat to his career and professional license.

104.	On July 1, 2024, Plaintiff began working for the Pennsylvania Human Relations Commission.

105.	Plaintiff alleges that his separation from BDISBO was not voluntary in any meaningful sense, but was the foreseeable result of Defendants' discriminatory, retaliatory, hostile, and intolerable working conditions.

106.	Plaintiff therefore alleges that Defendants constructively discharged him in violation of the ADA, Title VII, 42 U.S.C. § 1981, and the PHRA.

19

## VIII. CAUSES OF ACTION

### COUNT I
### Disability Discrimination, Failure to Accommodate, Disability Harassment, and Constructive Discharge
### Americans with Disabilities Act ("ADA")
### Against Defendant DGS

107.    Plaintiff incorporates by reference Paragraphs 1 through 106 as though fully set forth herein.

### *A. Legal Framework and Standard*

108.    The ADA prohibits covered employers from discriminating against qualified individuals because of disability with respect to compensation, terms, conditions, privileges, or status of employment.

109.    To state a claim for disability discrimination and failure to accommodate under the ADA, a plaintiff must allege that:

a. he is disabled within the meaning of the ADA;

b. he is otherwise qualified to perform the essential functions of the position with or without reasonable accommodation;

c. the employer knew of the disability;

d. the plaintiff requested or required accommodation;

e. the employer failed to provide reasonable accommodation or failed to engage in the interactive process in good faith; and

f. the plaintiff suffered an adverse employment action or other actionable harm because of disability.

110.     The ADA further prohibits disability-based harassment sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

111.     Constructive discharge occurs when discriminatory or retaliatory conduct creates working conditions so intolerable that a reasonable person would feel compelled to resign or leave employment.

### B. Application of Legal Framework

112.     Plaintiff is disabled within the meaning of the ADA because he suffers from Type II diabetes, neuropathy, circulation limitations, and related impairments affecting major life activities including walking, standing, sitting, lifting, and working. (Ex. 500).

113.     Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

114.     Defendants knew of Plaintiff's disabilities and accommodation needs because Plaintiff disclosed them through the accommodation process, injury reports, HR communications, and repeated workplace discussions. (Ex. 7; Ex. 12; Ex. 500; Ex. 510).

115.     Plaintiff requested reasonable accommodations including closer parking, orthopedic footwear accommodation, a sit/stand workstation, and related workplace flexibility. (Ex. 500; Ex. 510).

116.     BEEOPA formally approved Plaintiff's accommodations on March 1, 2024, including a sit/stand workstation, orthopedic footwear accommodation, and parking accommodation. (Ex. 12).

117.    Defendants nevertheless delayed, interfered with, undermined, revoked, or refused to implement the approved accommodations. (Ex. 30; Ex. 120; Ex. 500; Ex. 510).

118.    Defendants further subjected Plaintiff to humiliation, hostility, scrutiny, interrogation concerning his medical condition, and retaliatory treatment connected to his disabilities and accommodation requests. (Ex. 7; Ex. 30; Ex. 500; Ex. 510).

119.    Defendants failed to engage in the interactive process in good faith.

120.    Defendants' conduct caused physical injury, emotional distress, humiliation, deterioration of Plaintiff's medical condition, and loss of employment.

121.    Defendants created working conditions so hostile, humiliating, retaliatory, and intolerable that a reasonable person with Plaintiff's disabilities would not have remained employed under the same management structure.

122.    Plaintiff was thereby constructively discharged.

123.    Defendant DGS violated the ADA.

## COUNT II
### Retaliation
### Americans with Disabilities Act ("ADA")
### Against Defendant DGS

124.    Plaintiff incorporates by reference Paragraphs 1 through 123 as though fully set forth herein.

### *A. Legal Framework and Standard*

125.    The ADA prohibits retaliation against an employee because the employee requested accommodations, opposed disability discrimination, complained of disability-related misconduct, or otherwise engaged in protected activity under the ADA.

22

126.    To state an ADA retaliation claim, a plaintiff must allege that:

a. he engaged in protected activity;

b. the employer took materially adverse action against him; and

c. a causal connection exists between the protected activity and the adverse action.

127.    Protected activity under the ADA includes requesting accommodations, opposing disability discrimination, filing internal complaints, participating in disability-related investigations, and filing administrative discrimination charges.

### B. Application of Legal Framework

128.    Plaintiff engaged in protected activity under the ADA by requesting accommodations beginning in February 2024. (Ex. 500; Ex. 510).

129.    Plaintiff engaged in additional protected activity under the ADA by complaining internally about disability discrimination, accommodation interference, disability harassment, retaliation, and hostile treatment. (Ex. 7; Ex. 30; Ex. 120; Ex. 500; Ex. 510).

130.    Plaintiff further engaged in protected activity under the ADA by filing internal discrimination complaints on April 5, 2024 and April 8, 2024. (Ex. 500; Ex. 510).

131.    Defendants were aware of Plaintiff's protected ADA activity.

132.    Shortly after Plaintiff engaged in protected ADA activity, Defendants intensified scrutiny of Plaintiff, interfered with accommodations, launched investigations, threatened discipline, impeded transfer opportunities, escalated workplace hostility, and, after Plaintiff was forced onto EFA leave and filed EEOC/PHRC complaints, Sanford instructed BDISBO employees not to communicate with Plaintiff or participate in any request or inves-

23

tigation involving him without involving Sanford. (Ex. 79; Ex. 80a; Ex. 120; Ex. 500; Ex. 510).

133.    On March 26, 2024, Defendants revoked or interfered with Plaintiff's accommodations and subjected Plaintiff to hostile treatment shortly after Plaintiff repeatedly complained about accommodation failures and disability-related mistreatment. (Ex. 30; Ex. 120; Ex. 500; Ex. 510).

134.    On April 2 and April 3, 2024, Defendants escalated disciplinary proceedings against Plaintiff shortly after Plaintiff's protected complaints to Deputy Secretary Kirkland and HR personnel. (Ex. 79; Ex. 80a; Ex. 120).

135.    Defendants' retaliatory conduct materially affected Plaintiff's employment conditions and would deter a reasonable employee from engaging in protected ADA activity.

136.    Defendant DGS retaliated against Plaintiff in violation of the ADA.

### COUNT III
### Race Discrimination, Hostile Work Environment, and Constructive Discharge
### Title VII of the Civil Rights Act of 1964
### Against Defendant DGS

137.    Plaintiff incorporates by reference Paragraphs 1 through 136 as though fully set forth herein.

#### A. Legal Framework and Standard

138.    Title VII prohibits employers from discriminating against employees because of race with respect to compensation, terms, conditions, privileges, or status of employment.

139.     Title VII further prohibits race-based hostile work environments sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

140.     To state a Title VII race discrimination or hostile work environment claim, a plaintiff must allege that:

  a. he belongs to a protected class;

  b. he suffered intentional discrimination or race-based hostility;

  c. the discrimination or hostility affected the terms or conditions of employment; and

  d. the discrimination or hostility occurred because of race.

141.     Constructive discharge occurs when discriminatory or hostile conduct creates working conditions so intolerable that a reasonable person would feel compelled to leave employment.

### B. Application of Legal Framework

142.     Plaintiff is African-American and therefore belongs to a protected class.

143.     Plaintiff alleges that hostility toward him was directed not merely at educational attainment generally, but specifically at Plaintiff as an African-American professional perceived as academically elite, insufficiently deferential, outside favored social circles, and inconsistent with certain coworkers' or supervisors' views concerning racial authenticity, class identity, or status among Black professionals. (Ex. 500; Ex. 510).

144.     Plaintiff alleges that comments and hostility directed toward his Princeton background occurred in a racialized context involving reactions to Plaintiff as a Black professional with Ivy League credentials. (Ex. 500; Ex. 510).

25

145.     Plaintiff alleges that multiple coworkers and supervisors reacted negatively to Plaintiff's Ivy League background specifically because Plaintiff was an African-American professional whom they perceived as socially, educationally, culturally, or professionally outside accepted stereotypes regarding Black identity or class status. (Ex. 500; Ex. 510).

146.     Plaintiff alleges that Defendants tolerated or participated in race-based hostility directed toward him, including mocking comments, resentment, scrutiny, undermining conduct, and hostility tied to Plaintiff's race, education, and perceived professional status. (Ex. 500; Ex. 510).

147.     Defendants' conduct materially altered Plaintiff's working conditions and contributed to a hostile work environment.

148.     Defendants' conduct contributed to working conditions so hostile and intolerable that a reasonable person in Plaintiff's position would not have remained employed under the same management structure.

149.     Plaintiff was thereby constructively discharged.

150.     Defendant DGS violated Title VII.

**COUNT IV**
**Retaliation**
**Title VII of the Civil Rights Act of 1964**
**Against Defendant DGS**

151.     Plaintiff incorporates by reference Paragraphs 1 through 150 as though fully set forth herein.

### A. Legal Framework and Standard

152.    Title VII prohibits retaliation against employees who oppose race discrimination, complain of unlawful workplace practices, participate in discrimination investigations, or file EEOC or PHRC charges.

153.    To state a Title VII retaliation claim, a plaintiff must allege that:

a. he engaged in protected activity;

b. the employer took materially adverse action; and

c. a causal connection exists between the protected activity and the adverse action.

154.    Protected activity includes opposing race discrimination internally, filing internal complaints, filing EEOC or PHRC charges, and participating in discrimination proceedings.

### B. Application of Legal Framework

155.    Plaintiff engaged in protected activity under Title VII by opposing race discrimination, racial hostility, and race-based workplace harassment. (Ex. 500; Ex. 510).

156.    Plaintiff further engaged in protected activity under Title VII by complaining internally about discriminatory conduct and hostile workplace conditions. (Ex. 500; Ex. 510).

157.    Plaintiff engaged in additional protected activity under Title VII by filing EEOC and PHRC charges and by amending those charges.

158.    Defendants knew of Plaintiff's protected Title VII activity.

159.    After Plaintiff engaged in protected Title VII activity, Defendants intensified scrutiny of Plaintiff, escalated investigations, interfered with Plaintiff's transfer opportu-

nities, threatened discipline, subjected Plaintiff to additional hostility, and, after Plaintiff was forced onto EFA leave and filed EEOC/PHRC complaints, Sanford instructed BDISBO employees not to communicate with Plaintiff or cooperate with any investigation involving him without involving Sanford. (Ex. 79; Ex. 80a; Ex. 120; Ex. 500; Ex. 510).

160.    Defendants' retaliatory conduct included the March 26, 2024 investigation, the April 2024 disciplinary escalation, interference with Plaintiff's efforts to transfer to OGC or other Commonwealth positions, and constructive discharge.

161.    Defendants' conduct would deter a reasonable employee from engaging in protected Title VII activity.

162.    Defendant DGS violated Title VII.

## COUNT V
### Disability Discrimination, Retaliation, Failure to Accommodate, Hostile Work Environment, and Constructive Discharge
### Pennsylvania Human Relations Act ("PHRA")
### Against Defendant DGS

163.    Plaintiff incorporates by reference Paragraphs 1 through 162 as though fully set forth herein.

### A. Legal Framework and Standard

164.    The PHRA prohibits employers from discriminating against employees because of disability and from retaliating against employees who oppose unlawful discrimination or request accommodations.

165.    The PHRA also requires employers to provide reasonable accommodations and prohibits hostile work environments and constructive discharge arising from discriminatory conduct.

28

166.    The standards governing PHRA disability discrimination, retaliation, hostile work environment, and constructive discharge claims substantially parallel those governing analogous ADA claims.

### B. Application of Legal Framework

167.    Plaintiff engaged in protected activity under the PHRA by requesting accommodations, opposing disability discrimination, filing internal complaints, opposing retaliatory treatment, and filing PHRC charges.

168.    Defendant DGS discriminated against Plaintiff because of disability, failed to accommodate disability, failed to engage in the interactive process in good faith, retaliated against Plaintiff for protected PHRA activity, subjected Plaintiff to hostile treatment, and constructively discharged Plaintiff.

169.    Defendant DGS thereby violated the PHRA.

### COUNT VI
### Aiding and Abetting Discrimination and Retaliation
### Pennsylvania Human Relations Act, 43 P.S. § 955(e)
### Against Individual Defendants

170.    Plaintiff incorporates by reference Paragraphs 1 through 169 as though fully set forth herein.

### A. Legal Framework and Standard

171.    Section 955(e) of the PHRA prohibits individuals from aiding, abetting, inciting, compelling, or coercing discriminatory or retaliatory practices prohibited by the PHRA.

29

172. Supervisors, managers, and employees who knowingly participate in discriminatory or retaliatory conduct may be individually liable under 43 P.S. § 955(e).

### B. Application of Legal Framework

173. Defendant Calien aided and abetted disability discrimination and retaliation by interrogating Plaintiff concerning his medical condition, questioning his legitimacy and need for accommodations, and humiliating Plaintiff in connection with protected accommodation activity. (Ex. 7; Ex. 500; Ex. 510).

174. Defendant Sanford aided and abetted discrimination and retaliation by revoking or interfering with Plaintiff's accommodations, humiliating Plaintiff, yelling at Plaintiff, ordering Plaintiff removed from his accommodated workspace, escalating hostile treatment, and later instructing BDISBO employees not to communicate with Plaintiff or cooperate with any investigation involving Plaintiff without involving Sanford. (Ex. 30; Ex. 120; Ex. 500; Ex. 510).

175. Defendant Butler aided and abetted discrimination and retaliation by participating in the removal of Plaintiff from his accommodated workspace and participating in conduct undermining approved accommodations. (Ex. 120; Ex. 500; Ex. 510).

176. Defendant Kirkland aided and abetted discrimination and retaliation by failing to correct known discriminatory conduct, permitting retaliation to continue, escalating retaliatory investigations after protected complaints, and permitting hostile conditions to persist. (Ex. 120; Ex. 500; Ex. 510).

177. Defendant Wright aided and abetted discrimination and retaliation by participating in or facilitating conduct related to accommodation interference, retaliatory treatment, and hostile workplace conditions. (Ex. 500; Ex. 510).

178. Defendant Anderson aided and abetted discrimination and retaliation by participating in or facilitating conduct related to Plaintiff's accommodation process, the personal-desk incident, the handling of Plaintiff's accommodated workspace, and communications or workplace conduct that contributed to accommodation interference, retaliation, or hostile conditions. (Ex. 110; Ex. 500; Ex. 510).

179. Defendant Burnett aided and abetted race-based hostility directed toward Plaintiff. (Ex. 500; Ex. 510).

180. The individual Defendants violated 43 P.S. § 955(e).

### COUNT VII
### Retaliation for EEOC/PHRC Participation
### Title VII, ADA, and PHRA
### Against Defendant DGS

181. Plaintiff incorporates by reference Paragraphs 1 through 180 as though fully set forth herein.

### A. Legal Framework and Standard

182. Title VII, the ADA, and the PHRA prohibit retaliation against employees who file EEOC or PHRC charges, amend such charges, participate in administrative proceedings, or otherwise participate in protected enforcement activity.

31

183.    Participation-clause retaliation protections apply regardless of the ultimate merits of the underlying charge.

## B. Application of Legal Framework

184.    Plaintiff engaged in protected participation activity by filing EEOC and PHRC charges and by amending those charges.

185.    Defendant DGS knew of Plaintiff's EEOC and PHRC participation activity.

186.    After Plaintiff engaged in EEOC and PHRC participation activity, Defendants continued retaliatory conduct, including refusing to remediate the hostile environment, refusing to restore trust in the workplace, maintaining retaliatory management structures, preventing ordinary employee communication with Plaintiff, restricting cooperation with investigations involving Plaintiff, and effectively preventing Plaintiff's return to BDISBO employment.

187.    Defendants' retaliatory conduct materially contributed to Plaintiff's constructive discharge.

188.    Defendant DGS violated Title VII, the ADA, and the PHRA.

### COUNT VIII
### 42 U.S.C. § 1981 through 42 U.S.C. §1983
### Race Discrimination and Retaliation
### Against Appropriate Defendants

189.    Plaintiff incorporates by reference Paragraphs 1 through 188 as though fully set forth herein.

32

### *A. Legal Framework and Standard*

190.    Section 1981 prohibits intentional race discrimination and retaliation affecting contractual relationships, including employment relationships.

191.    To state a § 1981 claim, a plaintiff must allege intentional race discrimination or retaliation that impaired contractual employment rights or opportunities.

### *B. Application of Legal Framework*

192.    Defendants intentionally discriminated against Plaintiff because of race in connection with the terms, conditions, privileges, and environment of employment.

193.    Defendants further retaliated against Plaintiff for opposing race discrimination and hostile treatment.

194.    Defendants' conduct impaired Plaintiff's contractual employment relationship and employment opportunities.

195.    Defendants violated 42 U.S.C. § 1981.

## IX. CONSOLIDATED PRAYER FOR RELIEF

196.    WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants, jointly and severally to the extent permitted by law, awarding:

    a.    Declaratory relief that Defendants violated Title VII, the ADA, the PHRA, 42 U.S.C. §§ 1981 and 1983, and any other applicable law.

    b.    Actual damages, including back pay, front pay, lost benefits, lost employment opportunities, out-of-pocket losses, and compensation for emotional distress, humiliation, reputational harm, physical injury, and other consequential damages.

c.    Compensatory damages to the full extent permitted by Title VII, the ADA, the PHRA, § 1983, and other applicable law.

d.    Punitive damages against individual defendants where legally permitted and where the evidence demonstrates reckless or callous indifference to federally protected rights.

e.    Prospective injunctive relief requiring Defendants to remove or correct retaliatory and baseless investigative materials, cease discriminatory and retaliatory practices, provide effective disability accommodations, and refrain from obstructing Plaintiff's Commonwealth employment opportunities based on protected activity or unverified accusations.

f.    Equitable relief including reinstatement, transfer, front pay in lieu of reinstatement, neutral reference relief, expungement or correction of disciplinary and investigative records, and any other employment-related relief necessary to make Plaintiff whole.

g.    Reasonable attorneys' fees, expert fees, costs, and litigation expenses to the extent permitted by law.

h.    Prejudgment and post-judgment interest.

i.    Such other and further relief as the Court deems just and proper.

## X. JURY DEMAND

197.    Plaintiff demands a trial by jury on all claims so triable.

## XI. VERIFICATION

I declare under penalty of perjury that the factual statements made in this Verified

Complaint are true and correct based on my personal knowledge, and where stated on

information and belief, I believe them to be true.


/s/ Alson C. Alston

Alson C. Alston

May 20, 2026



Respectfully submitted,

Dated: May 20, 2026            By:      /s/ Alson Clayton Alston, Esq.
                                        Alson Clayton Alston, Esq.
                                        2836 W. Girard Avenue
                                        Philadelphia, PA 19130
                                        Phone: 610-803-7124
                                        ACAlstonLaw@protonmail.com
                                        Attorney for the Plaintiff
                                        PA Bar Id: 333339